### UNITED STATES, to Use of MENDENHALL et al. v. PEARSON et al.

(Circuit Court of Appeals, Ninth Circuit. September 7, 1920.)

No. 3440.

Contracts ⬤⟾198(5)—Subcontractor held not required to excavate portions left to supply dirt to cover subsequent structures.

Where a subcontract for excavation for government reclamation project, not only referred to the plans and specifications in the original contract, but also expressly required the work to be done pursuant to the direction of the government engineers, and the contractor was not required to complete omitted embankments left for subsequent structures, the subcontractor was not required to return and excavate portions of the canal left by direction of the engineers to furnish dirt to fill the embankments over structures completed after the original excavation was made.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by the United States, for the use and benefit of John Mendenhall and others, against Alexander Pearson and another. Judgment for use plaintiffs, and defendants bring error. Affirmed.

Gunn, Rasch & Hall, of Helena, Mont., and James Lanagan, of San Francisco, Cal., for plaintiffs in error.

J. H. McDonald, of Provo, Utah, McIntire & Murphy, of Helena, Mont., and John B. Clayberg, of San Francisco, Cal., for defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the defendant in error in the court below to recover of the plaintiff in error Alexander Pearson, doing business under the name of Pearson Construction Company, the sum of $3,687.58, with interest thereon at the rate of 8 per cent. per annum from June 15, 1917, with costs of suit, being the alleged balance due the plaintiff in the case from the defendant, for certain work done by the plaintiff as subcontractor under a contract that the defendant to the action had theretofore entered into with the United States. The case shows that on October 19, 1916, the plaintiff in error entered into a contract with the government, agreeing, under penalty of a bond executed by the United States Fidelity & Guaranty

Company as security for the performance of the contract, to construct and complete certain earthwork and structures, laterals and sublaterals, specifically described in schedules 1, 2, 3, and 4, and on laterals 43A and 50A of the Flathead reclamation project, in the state of Montana. The subcontract did not embrace any of the structures, openings for laterals, or emplacements, but included only excavation work specified in 50A and sublaterals specified in schedule 3. It in terms referred to the original contract, the provisions of which were expressly made applicable to the subcontract, in so far as pertinent.

The contention that the contract between Pearson and the United States was only referred to in the subcontract for the purpose of showing what the plans and specifications were that the Mendenhall Bird Company agreed to comply with is contrary to the express terms of the subcontract, declaring that the subcontractor should do the work thereby agreed to be performed under and pursuant to "the direction of the engineers" of the government. It is obvious, therefore, that the decision of the Supreme Court in the case of Guerini Stone Co. v. Carlin Construction Co., 240 U. S. 264, 36 Sup. Ct. 300, 60 L. Ed. 636, in no wise sustains the contention. The original contract required that all of the work thereby provided for should be performed under the direction and orders of an engineer for the government and his subordinates, which requirement, of course, entered into and became a part of that in suit.

Since the excavation work that the subcontractors agreed to do preceded the making of the openings and the building of the structures embraced by the principal contract, and since the entire work was by both contracts made subject to the supervision, direction, and control of the government engineers, necessarily the subcontractors were precluded from excavating such portions of the canal and laterals as the engineers determined should be left until the time arrived for the building of the structures and the making of the required openings. The contract itself in its fiftieth paragraph declared:

"When canal excavation precedes the building of structures, openings shall be left in the embankments at the sites of the structures, and, except when the construction of the structures is included in the contract, the contractor will not be required to complete such omitted embankments."

The necessity for this was thus explained by the chief engineer, Mr. Crowe, in his testimony:

"On our work, we line up our organization so as to move dirt but once. We make the fills from the cuts wherever practicable, wherever possible. When a structure is to be placed, we leave the ground in that vicinity untouched, without any work on it until the structure is completed. Then that dirt is moved out of that excavation and put on top of the structure. There is a fill on top of the structure. The structure is a device placed in the ditch to distribute the water more readily than could be distributed, if it were not there. In order to have the water running through the ditch these had to be removed. In this instance they were removed by Mr. Pearson—the Pearson Construction Company. Necessarily they must have been removed before they finished their work on August 14, 1917. The plaintiffs Mendenhall Bird Company had completed their work at the time I accepted it. I wouldn't have accepted it if it were not."

And again:

"Where a sublateral is put in—a concrete structure—the top will come up level with the bank of the ditch; that is, the head wall. We also excavate about two feet below the bottom of the ditch in the base of the foundation for his concrete structure on the small structures, and on large structures we excavate deeper, of course. A small structure would be from 18 inches to 4 feet deep. The large structures run up to 10 feet. Dirt taken out of the plugs is put on top of this concrete structure. The head wall of the structure comes up to the top of the embankment, and there is a pipe or box that comes through the bank of the ditch. The dirt that is removed in order to put in the headgates is the dirt that we put on top of the structure, and then we go to the bottom of the ditch to make the rest of the fill. If we have a structure that is 10 feet wide to put in, we leave sufficient dirt in the plug to cover the structure. As to whether that would require a 10-foot plug, it is apt to be 30 feet long. Some of these fills are 10 feet high, and the cut might only be a 2-foot cut.

"Q. Now, isn't it a fact that the man who digs the canal is supposed to dig all the dirt that he possibly can in the canal without interfering with the stakes showing the location of that structure? A. The fact that the stakes are there is simply of secondary importance. The fact that the dirt is there with which to make the embankment is the point, and that is why we require that plug to be left there, and we are only going to move that dirt once; we are not going to let these contractors take that out and remove that; we are only going to move that dirt once. Our contract says they must leave a hole in the embankment."

The evidence in the case shows that the dirt left in the canal by direction of the engineers, and indicated by stakes placed by them, necessary for the making of the required fills and embankments, were called "plugs," and that such dirt was left by the subcontractors by order of the engineers for the purposes stated, and was subsequently removed by the contractor in pursuance of his contract with the government. It shows that the subcontractors had three "outfits" at work in their undertaking, the last of which "pulled out" June 7, 1917, leaving the "plugs" of dirt that have been referred to remaining in place. They were not subject to removal by the subcontractors for the simple reason that the engineers, as both contracts authorized them to do, directed that they remain for subsequent use when the structures and openings should be built and made. The evidence shows, too, that the "plugs" were not included in the estimates made by the engineers of the work by the subcontractors to be paid for by the original contractor, and it shows further that the latter so understood the matter and made no objection to paying the subcontractors for the work actually performed by them, on any such ground. The testimony to that effect is undisputed, and, the evidence presenting no issue of fact for the determination of the jury, we are of the opinion that the court below was quite right in directing a verdict for the plaintiff in the case in accordance with the estimate of the government engineer, with interest from the time the amount became due.

The judgment is affirmed.